AF Approval *(signature)*                           Chief Approval *(signature)*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO.  8:20-cr-297-T-30JSS

CHRISTOPHER RYAN HELFRICH

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the Criminal Division Fraud Section (hereinafter collectively, the "Offices"); the defendant, Christopher Ryan Helfrich, and the attorney for the defendant, Richard Merlino, mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.

2.    Maximum Penalties

Count One carries a maximum sentence of 10 years' imprisonment, a fine of $250,000, a term of supervised release of not more than 3 years, and a

Defendant's Initials *(initials)*

special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

> First:    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the Information; and

> Second:    the defendant knew the unlawful purpose of the plan and willfully joined in it.

4.    Indictment Waiver

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    Exclusion from Federal Health Care Programs

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete and execute all necessary documents provided by and department or agency of the federal government,

Defendant's Initials            2

including but not limited to the United States Department of Health and Human
Services to effectuate this exclusion within 60 days of receiving the documents.
This exclusion will not affect defendant's right to apply for and receive benefits as
a beneficiary under any Federal health care program, including Medicare and
Medicaid.

6.    No Further Charges

If the Court accepts this plea agreement, the Offices agree not to
charge defendant with committing any other federal criminal offenses known to
the Offices at the time of the execution of this agreement, related to the conduct
giving rise to this plea agreement.

7.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make
full restitution to the Medicare Program, the Civilian Health and Medical
Program of the Department of Veterans Affairs ("CHAMPVA"),  and any other
victims as determined by the Court.

8.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will
recommend to the Court that the defendant be sentenced within the defendant's
applicable guidelines range as determined by the Court pursuant to the United
States Sentencing Guidelines, as adjusted by any departure the United States has

Defendant's Initials                    3

agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.    Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant

Defendant's Initials ⟨↗⟩                    4

has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the Offices, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      10.   Cooperation—Substantial Assistance to be Considered

      The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Offices, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the

Defendant's Initials _____         5

government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Offices, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the Offices, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.    Use of Information—Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a forfeiture judgment in the

Defendant's Initials _____                6

amount of $2,251,370.03, which is the amount of proceeds the defendant personally obtained as result of the offense to which he is pleading guilty.

The defendant acknowledges and agrees that (1) the defendant obtained $2,251,370.03 in proceeds as a result of the commission of the offense and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the Offices to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of

Defendant's Initials _____                    7

subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the

Defendant's Initials ⌒⊥⊼                    8

forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title,

Defendant's Initials _____          9

the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials            10

**B.**    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

        The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _____          12

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.

32(d)(2)(A)(ii), the defendant agrees to complete and submit to the Offices within

30 days of execution of this agreement an affidavit reflecting the defendant's

financial condition. The defendant promises that his financial statement and

disclosures will be complete, accurate and truthful and will include all assets in

which he has any interest or over which the defendant exercises control, directly

or indirectly, including those held by a spouse, dependent, nominee or other third

party. The defendant further agrees to execute any documents requested by the

United States needed to obtain from any third parties any records of assets owned

by the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years. The defendant similarly agrees and authorizes the Offices to

provide to, and obtain from, the United States Probation Office, the financial

affidavit, any of the defendant's federal, state, and local tax returns, bank records

and any other financial information concerning the defendant, for the purpose of

making any recommendations to the Court and for collecting any assessments,

fines, restitution, or forfeiture ordered by the Court. The defendant expressly

authorizes the Offices to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials                    13

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the

Defendant's Initials _____          14

Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Scope of Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the Criminal Division, Fraud Section, and cannot bind other federal, state, or local prosecuting authorities, although the Offices will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this case, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials ⟋⟍⟍    15

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath,

on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

The defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning in or around March 2018, and continuing through in or around February 2019, in the Middle District of Florida and elsewhere, the defendant, CHRISTOPHER RYAN HELFRICH, knowingly and willfully conspired and agreed with others to defraud federal health care benefit programs, including Medicare, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by a health care benefit program, in connection with the delivery of and payment for health care benefit services.

Defendant's Initials _____                17

*The Medicare Program*

The Medicare Program ("Medicare") was a federally funded program that

provided free or below-cost health care benefits to certain individuals, primarily

the elderly, blind, and disabled. The Centers for Medicare and Medicaid Services

("CMS") was an agency of the U.S. Department of Health and Human Service

("HHS"), and was the federal government body responsible for the

administration of Medicare. Medicare programs covered different types of

benefits that were separated into different program parts. Medicare Part B

covered, among other things, doctors' services, outpatient care, and certain

medical equipment that were medically necessary.

*DME Claims Submitted under Medicare Part B*

Durable medical equipment ("DME") were reusable medical equipment

such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a

type of DME that included knee braces, back braces, shoulder braces, and wrist

braces (collectively, "braces"). Medicare reimbursed DME providers and other

healthcare providers for medically necessary items and services rendered to

beneficiaries. To receive payment from Medicare, providers submitted or caused

the submission of claims to Medicare, either directly or through a billing

company. Medicare would pay a claim for the provision of DME only if the

equipment was medically necessary, ordered by a licensed provider, and actually

Defendant's Initials ____        18

provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

*Overview regarding CHAMPVA*

CHAMPVA, which is a federal health benefit program, was a comprehensive health care program in which the VA shared the cost of covered health care services and supplies with eligible beneficiaries. In general, the CHAMPVA program covered most health care services and supplies that were medically necessary. CHAMPVA was always the secondary payer to Medicare and reimbursed beneficiaries for costs that Medicare did not cover. Health care claims must have first been sent to Medicare for processing; Medicare would then electronically forward claims to CHAMPVA. For Medicare supplemental plans, CHAMPVA processed the remaining portion of the claim after receiving Medicare's explanation of benefits.

*The Scheme*

The defendant, who resided in the Middle District of Florida, was an owner of A2B Insurance Solutions LLC ("A2B Insurance"), and the owner, registered agent, and founder of CRH Holdings, LLC ("CRH Holdings"). A2B Insurance was a limited liability company located in Seminole County, Florida,

Defendant's Initials _A_             19

which is within the Middle District of Florida. CRH Holdings was a limited

liability company established in or around January 2016 in Hillsborough County,

Florida, which is also in the Middle District of Florida.

The defendant and his conspirators obtained access to the personal

information ("PII") and purported personal health information of thousands of

Medicare beneficiaries. The defendant, through CRH Holdings, paid

international call centers to obtain Medicare beneficiaries' contact information, to

make contact with the Medicare beneficiaries via telemarketing, and then induce

the Medicare beneficiaries to accept braces regardless of medical necessity by

touting the braces as paid for by insurance. The defendant, his conspirators at

A2B Insurance, and other "marketing" companies purchased from CRH

Holdings Medicare beneficiaries' PII and purported personal health information

and recordings of the call center's calls to the Medicare beneficiaries.

During the scheme, through CRH Holdings, Helfrich sold "leads" to S.G.,

who owned and operated a purported "marketing" company ("Marketing

Company 1") in Newport Beach, California. Marketing Company 1 targeted the

Medicare-aged population to promote DME, specifically, braces (*e.g.*, knee

braces, wrist braces, back braces). The "leads" that Helfrich sold to S.G. were

principally for Medicare beneficiaries so as to allow for submission to Medicare

or other federal health benefit programs (*e.g.*, CHAMPVA) for reimbursement.

Defendant's Initials ⟨A⟩                    20

The defendant and his conspirators at A2B Insurance sent the Medicare beneficiaries' PII and purported personal health information to WebDoctors Plus, Inc. ("WebDoctors") and Integrated Support Plus, Inc. ("Integrated") (collectively, the "Integrated Support Network") and others. WebDoctors was a purported telemedicine company located in Hernando County in the Middle District of Florida. Integrated was a purported telemedicine company located in Hernando County in the Middle District of Florida. Willie McNeal IV was the owner and chief executive officer of Integrated Support Network. The defendant and his conspirators at A2B Insurance paid illegal kickbacks and bribes to the Integrated Support Network and others in exchange for arranging for medical providers to sign orders for DME regardless of medical necessity. The defendant, his conspirators at A2B Insurance, Willie McNeal IV, and others disguised the nature and source of these kickbacks and bribes by entering into sham contracts and by generating and causing the generation of fraudulent invoices that falsely identified the payments as for "BPO" (shorthand for "business process outsourcing"). The defendant and his conspirators at A2B Insurance chose which braces medical providers would prescribe based on which braces would be the most profitable and Medicare was least likely to question, not based on the medical need of the patients.

In exchange for the referral of the doctors' brace orders, the defendant and his conspirators at A2B Insurance received illegal kickbacks and bribes from conspirators at DME providers and conspirators acting as intermediaries for DME providers. The defendant, his conspirators at A2B Insurance, and others disguised the nature and source of these kickbacks and bribes by entering into sham contracts that falsely identified the payments as for a flat or hourly rate, when in reality the conspirators paid the defendant a set amount per brace order. The defendant knew that the DME providers used these fraudulently obtained doctors' orders to support false and fraudulent claims to Medicare.

From in or about August 2018 through in or about February 2019, the defendant and his conspirators at A2B Insurance paid their conspirators at the Integrated Support Network approximately $577,505.00 in illegal kickbacks and bribes in exchange for signed brace orders. From in or about August 2018 through in or about February 2019, the defendant and his conspirators at A2B Insurance received approximately $1,447,102.30 in illegal kickbacks and bribes in exchange for signed brace orders from their conspirators at DME providers and conspirators acting as intermediaries for DME providers. The defendant received approximately $43,000 as part of his ownership of A2B Insurance.

From in or about March 2018 through in or about February 2019, the defendant received approximately $2,208,370.30 from his conspirators at A2B

Defendant's Initials _____                    22

Insurance and other "marketing" companies, including Marketing Company 1, in exchange for Medicare beneficiaries' PII and purported personal health information and recordings of the call center's calls to the Medicare beneficiaries.

    12.    <u>Entire Agreement</u>

        This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____       23

13.   Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant and

that defendant fully understands its terms.

DATED this **23rd** day of ~~August~~ **September** 2020.

MARIA CHAPA LOPEZ
United States Attorney

_____
Christopher Ryan Helfrich
Defendant

_____
Kristen A. Fiore
Assistant United States Attorney

_____
Richard Merlino **FBN : 0977640**
Attorney for Defendant

_____
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

ALLAN MEDINA
Chief, Health Care Fraud Unit
U.S. Department of Justice

_____
CATHERINE WAGNER
Fraud Section, Criminal Division
U.S. Department of Justice